**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | MASTER FILE NO. 12-md-02311 |

_____

| | |
|---|---|
| In Re: Shock Absorbers | HON. MARIANNE O. BATTANI |

_____

THIS DOCUMENT RELATES TO:

| | |
|---|---|
| Dealership Actions | 16-03302 |
| End-Payor Actions | 15-03303 |

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS THE END-PAYORS' AND THE AUTO DEALERS'
CLASS ACTION COMPLAINTS**

Before the Court is Defendants KYB Corporation, f/k/a/ Kayaba Industry Co., Ltd., ("KYB Industry) and KYB Americas Corporation ("KYB Corporation") (collectively "KYB Defendants") Collective Motion to Dismiss the End-Payor Plaintiffs' and Auto Dealer Plaintiffs' Class Action Complaints (Doc. No. 3 in 16-3302; Doc. No. 23 in 15-3303). In their motion, KYB Defendants challenge the sufficiency of the allegations of the conspiracy pursuant to Fed. R. Civ. P. 12(b)(6). The Court has reviewed all of the filings, The Court has reviewed all of the filings, and for the reasons that follow, the motion is **GRANTED in part** and **DENIED in part**.

I. INTRODUCTION AND FACTUAL ALLEGATIONS

After the United States Judicial Panel on Multidistrict Litigation ("Judicial Panel" or "Panel") transferred actions sharing "factual questions arising out of an alleged conspiracy to inflate, fix, raise, maintain, or artificially stabilize prices of automotive wire harness systems" to the Eastern District of Michigan, (12-md-02311, Doc. No. 2), in February 2012, the scope and extent of alleged antitrust conspiratorial conduct in the automotive component parts industry grew significantly. In June 2012, the Judicial Panel expanded MDL No. 2311 to include alleged conspiracies to fix the prices of three additional component parts, and to date the number of component parts has reached forty. Thereafter, Court entered a briefing order to streamline the resolution of motions filed in the component parts cases, with a focus on eliminating duplicative discovery, preventing inconsistent pretrial rulings, and conserving resources. (See Doc. No. 793 in 12-2311). In the briefing order, the Court instructed the parties to identify previously uncited authority from the Supreme Court of the United States, the Sixth Circuit, or the highest court of the state under which the claim was brought when addressing state law claims. Id.

Consequently, to the extent that no new authority is included, the Court relies on the analysis set forth in its prior opinions resolving collective motions to dismiss Indirect Purchaser Plaintiffs' complaints. To the extent that the parties argue for a different outcome on a particular claim, but provided no new authority, or provide new authority to support a previous outcome, the Court declines to address these arguments. Instead, the Court directs its attention to those claims where Defendants advance new authority in asserting that the Court must dismiss assert that new case law requires a

different resolution from the Court's prior decisions.

Automobile Dealer Plaintiffs ("ADPs") and End-Payor Plaintiffs ("EPPs") (collectively "Indirect Purchaser Plaintiffs" or "IPPs" ) bring class actions against Defendants under federal and state law based on Defendants' alleged conspiracy to rig bids, fix the prices, and allocate the market and customers of Shock Absorbers manufactured or sold in the United States. (Doc. No. 1 in 16-11256, hereinafter "ADPs' Complaint," at ¶ 1; Doc. No. 1 in 15-14080, hereinafter, "EPPs' Complaint," at ¶ 1). Defendants are manufacturers or sellers of Shock Absorbers that are manufactured or sold in the United States. (ADP's Complaint at ¶¶ 1, 4, 144, 145; EPPs' Complaint at ¶¶ 1, 4, 106). Shock Absorbers, also called dampers, "are part of the suspension system on automobiles. They absorb and dissipate energy to help cushion vehicles on uneven roads leading to improved ride quality and vehicle handling." (ADPs' Compl. at ¶ 3).

On September 16, 2015, the Department of Justice ("DOJ") announced that Defendant Kayaba Industry Co., Ltd. agreed to plead guilty to criminal Information and to pay a $62 million fine for participation in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry. (ADPs' Complaint at ¶ 7). It agreed to fix the prices of Shock Absorbers sold in the United States and elsewhere. (ADPs' Complaint at ¶ 7). According to the DOJ, KYB Industries sold Shock Absorbers "to Fuji Heavy Industries Ltd. (manufacturer of Subaru vehicles), Honda Motor Co., Ltd., Kawasaki Heavy Industries, Ltd., Nissan Motor Company Ltd., Suzuki Motor Corporation, and Toyota Motor Company, and certain of their subsidiaries (collectively "Vehicle Manufacturers") in the United States and elsewhere from as early as the mid-1990s and continuing until at least December 2012 in violation of the Sherman Act,

15 U.S.C. § 1." (ADPs' Complaint at ¶ 81; EPPs' Complaint at ¶ 98).

According to IPPs, KYB Industries is the largest manufacturer of Shock Absorbers. (See e.g. ADPs' Complaint at ¶ 64). IPPs also allege that KYB Defendants acted as a supplier to Original Equipment Manufacturers ("OEMs") and rigged bids to OEMs with their co-conspirators. (ADPs' Complaint at ¶¶ 66, 67; EPPs' Complaint at ¶¶ 1, 120, 121).

In their complaints, IPPs allege that market conditions conducive to an antitrust conspiracy exist. (ADPs' Complaint at ¶ 70; EPPs' Complaint at ¶ 123). Specifically, the Shock Absorbers market has high barriers to entry, which facilitate the formation and maintenance of a cartel. (ADPs' Complaint at ¶ 162; EPPs' Complaint at ¶ 88). Those barriers include "costly and lengthy start-up costs, including multi-million dollar costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, and long-standing customer relationships." (ADPs' Complaint at ¶ 72; EPPs' Complaint at ¶ 89). Defendants own patents, another factor hindering entry into the market. (ADPs' Complaint at ¶ 73; EPPs' Complaint at ¶ 90). IPPs further allege inelasticity of demand. (ADPs' Complaint at ¶¶ 75-77; EPPs' Complaint at ¶¶ 92-94).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a complaint which fails "to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must show that his complaint alleges facts which, if proven, would entitle him to relief. First Am. Title Co. v. DeVaugh, 480 F.3d 438, 443 (6th Cir. 2007). "A complaint must contain

either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997). When reviewing a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although the federal procedural rules do not require that the facts alleged in the complaint be detailed, " 'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.' " Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## III. ANALYSIS

KYB Defendants argue that the facts, as alleged in the complaints, support dismissal because they reveal that IPPs lack standing to bring the claims and they do not meet the pleadings standards articulated in Twombly. The arguments are discussed below.

### A. Standing

The parties dispute whether Indirect Purchaser Plaintiffs have satisfied the constitutional requirement for standing; specifically, whether IPPs alleged a personal injury "fairly traceable" to the defendant's allegedly unlawful conduct" that is "likely to be redressed by a favorable judicial decision." Lexmark Int'l, Inc. v. Static Control Components, Inc., __ U.S. __, 134 S. Ct. 1377, 1386 (2014) (citation omitted). The

5

resolution of the dispute turns on the allegations advanced by IPPs.

In their complaints, IPPs allege that Defendants manufacture, market and sell Shock Absorbers throughout and into the United States." (ADPs' Complaint at ¶ 4; EPPs' Complaint at ¶ 5). They allege that KYB Defendants and co-conspirators "conspired to fix, raise, maintain and/or stabilize prices, and allocate market shares for Shock Absorbers." (Id.). IPPs also allege that as a direct result of the conduct, they paid "artificially inflated prices for Shock Absorbers during the Class Period and . . .suffered antitrust injury to their business or property." (ADPs' Complaint at ¶ 9; EPPs' Complaint at ¶ 9). Finally, IPPs allege that Shock Absorbers are "identifiable, discrete physical products that remain essentially unchanged when incorporated into a vehicle" and "follow a traceable physical chain of distribution" and the costs likewise can be traced through the chain of distribution. (ADPs' Complaint at ¶ 139; EPPs' Complaint at ¶ 156).

According to KYB Defendants, IPPs cannot show they were harmed by KYB Defendants because IPPs failed to allege they purchased Shock Absorbers manufactured or marketed by KYB Defendants. Consequently, KYB Defendants conclude that IPPs cannot meet pleading requirements. KYB Defendants analogize these allegations to those found deficient in Sierra Club v. Morton, 405 U.S. 727, 728-30, 735 (1972). The Supreme Court denied the plaintiff's request for judicial review of the defendant's proposed extensive skiing development under the Administrative Procedures Act, finding the plaintiff lacked standing. In Sierra Club, the plaintiff asserted it had a special interest in the conservation of national parks. The Court held that the plaintiff did not have a personal stake in the outcome because the Sierra Club

did not allege "that it or its members would be affected in any of their activities or pastimes by the [ ] development. Nowhere in the pleadings or affidavits did the Club state that its members use [land] for any purpose, much less that they use it in any way that would be significantly affected by the proposed actions of the respondent." Id. at 1366.

To the extent that IPPs did not explicitly allege that they purchased Shock Absorbers manufactured by KYB Defendants, here, the allegations nevertheless place IPPs among the injured. IPPs have alleged that KYB Defendants overcharged the direct purchasers, and that some or all of the overcharge was passed on to them through each of the various levels of the distribution chain. In re Graphics Processing Units Antitrust Litig., 253 F.R.D. 478, 502 (N. D. Cal. 2008).

KYB Defendants' reliance on the decision in In re Magnesium Oxide Antitrust Litig., No. 10-5943, 2011 WL 5008090 (D. N.J. Oct. 20, 2011) likewise is misplaced. In that case, the plaintiffs failed to identify which products they had purchased, and the products were not only produced differently, they had different commercial applications. The court held in that case that "without knowing which specific products' the plaintiffs purchased, it was 'impossible to determine whether an increase in their price is the type of injury that furthers the object of the alleged conspiracy." Id. In contrast, here the complaint makes clear the IPPs purchased one product–Shock Absorbers, which they alleged could be identified during the distribution chain. (ADPs' Complaint at ¶¶ 3, 18, 139; EPPs' Complaint at ¶¶ 3, 18, 157).

In addition, under antitrust law, KYB Defendants may be held jointly and severally liable for the conduct of their co-conspirators. Therefore, injury is not limited to

vehicles containing Shock Absorbers manufactured or sold by KYB Defendants. The existence of the guilty plea reveals that KYB Industries conspired with another actor. In addition, IPPs allege the likely existence of an applicant for amnesty under the Antitrust Criminal Penalty Enhancement and Reform Act ("ACPERA"). (ADPs' Complaint at ¶¶ 86-87; EPPs' Complaint at ¶¶ 103-104). Therefore, there is an inference that the Shock Absorbers conspiracy affected OEMS other than those referenced in KYB Industries' guilty plea.

In the alternative, KYB Defendants argue in the absence of a named plaintiff in each state where IPPs pursue a claim the claims under those laws must be dismissed for lack of standing. The Court has repeatedly rejected this argument, and does so here without discussion.

### B. Plausible Conspiracy

The parties dispute whether IPPs allege sufficient facts to support their claim that they indirectly purchased Shock Absorbers from Defendants or unnamed co-conspirators. ADPs do not allege that they purchased Shock Absorbers, they merely allege they purchased "Automotive Parts" from Defendants. Moreover, KYB Defendants contend that IPPs' failure to allege purchases from Japanese OEMs renders their complaints subject to dismissal.

#### 1. Purchase of Automotive Parts, Not Shock Absorbers

KYB Defendants are correct that ADPs only claim to have purchased "Vehicles containing Automotive Parts. . . ." (ADP Complaint ¶¶ 19-56*). In addition, KYB Defendants assert that ADPs fail to allege specific facts to support that unspecified "Automotive Parts" were manufactured by KYB Defendants and/or their co-conspirators.

The Court, reading the complaint, as a whole and in the light most favorable to ADPs, finds it clear that the allegations about Automotive Parts refers to Shock Absorbers, which are mentioned almost 300 time in the ADP complaint, including the class definition.  (See also, ADPs' Complaint at ¶ 18).  KYB Defendants have notice of the claims being advanced, and it would not serve justice to dismiss ADPs' complaint because of a "technical" pleading deficiency.  Further, "[p]leadings must be construed so as to do justice."  Fed. R. Civ. P. 8(e).

### 2.  Failure to Allege Purchases from Japanese OEMs

KYB Defendants further challenge ADPs' complaint because at least fourteen ADPs do not even allege they were authorized dealers for the OEMs identified by KYB Industries, in its plea, as targets of the conspiracy.  In the absence of any allegation that ADPs purchased vehicles manufactured by the identified OEMS, much less that they purchased vehicles manufactured by identified OEMs that contained Shock Absorbers manufactured or sold by KYB Defendants, the Court must dismiss the claims of any ADPs that were not authorized dealers for Subaru, Honda, Kawasaki, Nissan, Suzuki, or Toyota–those identified in the guilty plea.

Likewise, KYB Defendants assert that the Court must dismiss EPPs' complaint because discovery from EPPs in other component part cases shows that they did not purchase vehicles from the OEMs identified in the complaints; therefore, they cannot be liable for a conspiracy in the Shock Absorbers market.  Although EPPs allege that Defendants conspired with respect to Shock Absorbers sold to the same OEMS (EPPs' Complaint at ¶ 98), EPPs never allege that they purchased a vehicle manufactured by one of those OEMs.  They merely plead that they "purchased at least one Shock

Absorber indirectly from at least one Defendant. (Id. at ¶¶19-73).  EPPs failed to identify what vehicle each EPP purchased, and, in the absence of this specific information, KYB Defendants conclude that there is no way to identify how many EPPs did not purchase vehicles containing Shock Absorbers manufactured or sold by KYB Defendants.

The Court disagrees with KYB Defendants' assertion that IPPs must plead that they purchased and/or leased new vehicles sold to specific OEMS that purchased Shock Absorbers from KYB Defendants.  In their complaints, IPPs allege that Defendants, including KYB Defendants, conspired to fix the prices of Shock Absorbers as defined in the complaints sold to OEMs by KYB Defendants and its co-conspirators.  IPPs need not confine the allegations in their complaints to the contours of KYB Industries' plea agreement.  Defendants rarely plead guilty to all of the charges against them, and limitations on government resources may play as much a role in any plea agreement reached as the conduct giving rise to the guilty pleas.  In re High Fructose Corn Syrup Antitrust Litig., 295 F.3d 664-665 (7th Cir. 2002).

Moreover, reliance on information from consolidated discovery showing that EPPs did not purchase vehicles manufactured by OEMS to whom KYB Defendants sold Shock Absorbers goes beyond the scope of a Rule 12(b)(6) motion.  KYB Defendants have not provided any discovery, and IPPs have alleged the existence of co-conspirators and an amnesty applicant.  KYB Defendants' position builds on a reading of the complaints and KYB Industries' Plea Agreement in the light most favorable to themselves.  The Court, however, must credit the allegations advanced by IPPs in the light most favorable to IPPs.  Other allegations in the complaints undermine the narrow reading advocated by KYB Defendants.  KYB Defendants' argument builds on the

assumption that KYB Corporation's guilty plea establishes immutable boundaries as to its conduct. Again, case law does not support such confinement. See e.g. In re High Fructose Corn Syrup Antitrust Litig., 295 F.3d at 664-665.

Further, the Court is mindful that KYB Corporation's guilty plea is not the sole basis for the allegations against KYB Defendants. IPPs' complaints detail international government investigations that resulted in the guilty pleas of other defendants for their part in price-fixing and bid-rigging as well as the market conditions that facilitated the conspiracy. The factual allegations create "a reasonable expectation that discovery will reveal evidence of illegal agreement" beyond those parties that have pleaded guilty and the conduct for which they pleaded guilty. Twombly, 550 U.S. at 556. Accord In re Polyurethane Foam Antitrust Litig., 799 F. Supp. 2d 777, 782 (N.D. Ohio 2011) (relying on "specific admissions" made during a governmental investigation that supported the "existence of a conspiratorial agreement").

These are the type of allegations found to satisfy Twombly. At this stage in the proceedings, the Court is required to read the complaints in the light most favorable to IPPs. Here, the allegations suggest a broad industry-wide conspiracy. IPPs' complaints, read in their entirety, reflect a conspiracy directed at OEMs, and KYB Defendants' reliance on a technical pleading deficiency by ADPs is misplaced. The existence of inferences that undermine a conspiracy does not undermine the sufficiency of the complaints here, provided one such inference suggests a plausible conspiracy.

### C. State Law Claims

Pursuant to the parties stipulation, the state specific arguments have been withdrawn.

## IV.  CONCLUSION

For the reasons discussed above, and pursuant to the parties' stipulation,  the Court **DENIES** KYB Defendants' request to dismiss the federal claims and **GRANTS,** without discussion, the motion to limit damages under the laws of Utah and New Hampshire based upon applicable statutes of limitation; **DISMISSES**, without discussion, ADPs' and EPPs' South Carolina consumer protection class action**,** and **DISMISSES**, without discussion, EPPs' unjust enrichment claim under California law.

**IT IS SO ORDERED**.

Date:  March 3, 2017  
                                                                s/Marianne O. Battani                      
                                                                MARIANNE O. BATTANI  
                                                                United States District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 3, 2017.

                                                                s/ Kay Doaks             
                                                                Case Manager